The **BREZINA CONSTRUCTION COM-PANY, Inc.**

v.

The **UNITED STATES.**

No. 118–70.

United States Court of Claims.

Oct. 15, 1971.

---

Joseph M. Butler, Rapid City, S. D., for plaintiff; Thomas H. Foye, Rapid City, S. D., attorney of record. Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., of counsel.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge:

In this case the court once again finds itself faced with the task of resolving a dispute as to contract interpretation where its only guide is an ambiguous contract. There is no dispute as to any of the material facts, and the case is before the court on the parties' cross-motions for summary judgment.

In March 1967, plaintiff was awarded a contract, in the amount of $1,343,000, for the construction of two barracks and an officers' mess at the Naval Station at Long Beach, California. The invitation for bids issued by the Government solicited bids on the basis of four different alternatives (or items) of which only the first two are necessary to our consideration. The basis of bid item 1 was "the entire work complete in accordance with all requirements indicated and specified." Bid item 2 was identical with bid item 1 except that, under bid item 2, casework in the living rooms of the barracks was expressly omitted. The contract was awarded on the basis of bid item 2.

The present controversy arose on January 29, 1969, when the contracting officer issued a deductive change order purporting to delete 919 lighting fixtures (types 36, 36A, and 52) from the living rooms of the barracks, thereby reducing the contract price by $33,600. This dollar amount represents the uncontroverted value of the fixtures as shown by a detailed Government estimate in the record. Plaintiff protested, claiming, as it does here, that the fixtures in question were not a contract requirement under bid item 2, and, for that reason, it had not included an amount for the fixtures in its bid.

Plaintiff's protest was based on its interpretation of bid item 2. According to this interpretation, the omission of casework carried with it the omission of all the lighting fixtures attached to the casework. Since all of the 919 fixtures involved were attached to the casework, they were not a contract requirement under bid item 2.

The contracting officer's final decision was adverse to plaintiff, and an appeal to the Armed Services Board of Contract Appeals followed. The board's decision, likewise, was adverse to plaintiff. This suit followed. The parties are in agreement that the only issue before the court is one of contract interpretation, a legal issue, and that the board's decision is not entitled to finality under the Wunderlich Act, 41 U.S.C. §§ 321–322 (1964).

Before proceeding with the discussion of the issues, it would be well to identify with more precision the technical terms involved in this dispute. "Casework" refers to wooden interior trim consisting of such items as beds, desks, wardrobes, and wall partitions. These built-in units are part of the permanent structure and function in lieu of individual pieces of furniture. The type 36, 36A, and 52 lighting fixtures, which are the subject of the dispute, are all depicted in the drawings accompanying the specifications as attached to the casework under bid item 1.[1] The type 36 fixture is a

---

1. The board found the proposition that the fixtures were to be mounted on the casework under bid item 1 was "subject to controversy," and the Government has

shelf-mounted fluorescent fixture, 24 inches long. Type 36A is identical except that it is 48 inches long. The type 52 fixture is "a wall, or shelf mounted, shelf light 36″ long x 10⅝₆″ deep."

The Government's position, of course, is that under bid item 2 the light fixtures were required to be furnished, notwithstanding the fact the casework to which the fixtures were to be attached was omitted. This position has its basis in two paragraphs of the specifications under the general heading of "Casework":

6B.4.7 *Electrical fixtures,* where indicated, shall be provided by the casework manufacturer. Fixtures shall bear the Underwriters Laboratories, Inc. label of approval, and shall be furnished, complete, with 3-prong grounding plugs and sufficient cord to enable connection to the wall outlets indicated on the electrical drawings.

6B.4.7.1 *Type.* Fixtures shall be stem mounted, rotating type, 15 watt fluorescent, self contained without remote ballast. Overall outside dimensions of the fixtures shall be approximately 2 inches high by 3 inches deep by 22 inches long. Exterior finish shall be manufacturer's standard baked-on enamel. Reflector shall be spherical shape with white baked-on enamel finish. Fixture shall be complete with push-pull switch. Fixtures of the type specified may be obtained from "Lightolier", 2515 South Broadway, Los Angeles, California. Outlets shall be 3-prong grounding type, 15 amps, and conforming to requirements for outlets as specified in the section entitled "Electrical Work." Fixtures by other manufacturers which are similar and equal in performance to the type specified may be provided, subject to prior approval.

According to the Government's view, which was also the board's, paragraph

6B.4.7.1 provides the decisive definition of which fixtures were a part of the casework under bid item 1 and, therefore, which fixtures were to be omitted with the casework under bid item 2. This being the case, the only fixtures to be omitted under bid item 2 would be 15 watt fluorescent fixtures approximately 2 inches high by 3 inches deep by 22 inches long. Therefore, the type 36, 36A, and 52 fixtures would not be omitted since they are, respectively, 24, 48, and 36 inches in length and, in addition, type 52 is 10⅝₆ inches deep and uses a 30 watt lamp. According to the Government, the 919 fixtures in question are not described in 6B.4.7.1. We think otherwise.

We agree with the Government that types 36, 36A, and 52 are excluded from 6B.4.7.1. But we do not agree that this factor is controlling, for, when 6B.4.7.1. is read with 6B.4.7, its parent, the result is an ambiguity.

Paragraph 6B.4.7 provides that "[e]lectrical fixtures, where indicated [on the drawings], shall be provided by the casework manufacturer. Fixtures * * * shall be furnished, complete, with 3-prong grounding plugs and sufficient cord to enable connection to the wall outlets * * *." In the first place, it is obvious that a conflict with 6B.4.7.1 is apparently created by the first sentence of 6B.4.7 since type 36, 36A, and 52 fixtures are all indicated on the drawings. If all three fixtures are required to be furnished by the casework manufacturer under bid item 1, the natural reading of bid item 2 would exclude the fixtures. Moreover, the apparent conflict between the paragraphs and the ambiguity of the specifications is compounded by the second sentence of 6B.4.7, because the 15 watt fluorescent fixture detailed in 6B.4.7.1 has a rigid conduit connection and no cord attached to it. In fact, the only fixture involved

endeavored to demonstrate such a controversy in its briefs before the court. We are not impressed, however, as we believe the drawings and the descriptions

of the fixtures amply support plaintiff's contention that the fixtures were to be attached to the casework under bid item 1.

here which has a cord and a 3-prong ground plug is type 36.

■ It is in cases such as this one, where the contract is ambiguous and where there are no extraneous aids to interpretation, that the courts are forced to resort to guidelines based on what is thought to be sound policy rather than on the intent of the contracting parties. The rule, often repeated by this court, is that if a Government contract is ambiguous and if the construction placed upon it by the contractor is reasonable, the contractor's construction will be adopted, unless the parties' intention is otherwise affirmatively revealed. *See, e. g.,* Morrison-Knudsen Co. v. United States, 427 F.2d 1181, 1185, 192 Ct.Cl. 410, 418 (1970); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 876–877, 163 Ct.Cl. 1, 6 (1963).

Plaintiff admits that the contract is ambiguous, but argues that, under all the circumstances, its interpretation of the contract is reasonable. Primary emphasis is placed on the first sentence of 6B.4.7. We agree with plaintiff and think that it was within the zone of reasonableness for plaintiff to rely upon the above-mentioned sentence and to construe it as meaning that all fixtures indicated on the drawings as attached to the casework were not required under bid item 2. We also think it was reasonable for plaintiff to construe the seemingly conflicting descriptions of fixtures in 6B.4.7 and 6B.4.7.1 merely as specific references to some, but not all, of the electrical fixtures indicated in the drawings.

Counsel for the Government maintains that plaintiff's interpretation of the contract was not reasonable because, according to plaintiff's interpretation, the barracks would be without lights. While such a result would certainly be sufficient to cast some doubt upon the reasonableness of plaintiff's interpretation, we cannot conclude from this record that the barracks would be left insufficiently lighted if the fixtures in question were omitted. It may be, for example, that the Government intended to have another contractor complete the installation of lighting fixtures, or it may be that lamps or similar appliances were contemplated.

A companion rule to the rule of ambiguities is that, where a bidder faced with a "patent and glaring discrepancy" fails to seek clarification from the contracting officer, the discrepancy should be construed against him. Beacon Constr. Co. v. United States, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963). See J. A. Jones Constr. Co. v. United States, 395 F.2d 783, 789–790, 184 Ct.Cl. 1, 12–13 (1968). This principle places a wise limitation on the rule of ambiguities, but, unfortunately, puts the court in the unenviable position of having to distinguish between ambiguities and patent discrepancies. Needless to say, there can be no fixed rule for making this determination in every instance. "What constitutes a patent and glaring omission cannot * * * be defined generally, but only on an *ad hoc* basis by looking to what a reasonable man would find to be patent and glaring." L. Rosenman Corp. v. United States, 390 F.2d 711, 713, 182 Ct.Cl. 586, 590 (1968).

Here, we have already determined that plaintiff's construction of the contract was reasonable, and there is no assertion that plaintiff acted in other than good faith. Certainly we think that these circumstances are relevant to the inquiry as to the patency and glaringness of the contractual discrepancy, because saying that a contractual provision contains a patent discrepancy is tantamount to saying that no reasonable construction of the provision can be made unilaterally by the contractor until the discrepancy is resolved by the parties.

■ Moreover, we are of the opinion that the ambiguity of the contract language in this case does not rise to the level of a patent discrepancy. The two paragraphs of the specifications are not hopelessly at odds with one another. Rather, as mentioned above, they may reasonably be read together.

For the foregoing reasons, plaintiff's motion for summary judgment is granted, defendant's cross-motion for summary judgment is denied, and judgment is entered for plaintiff in the amount of thirty-three thousand six hundred dollars ($33,600).