**AVEDON CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 155–87C.**

United States Claims Court.

Nov. 17, 1988.

John R. Tolle, Vienna, Va., for plaintiff.

Anthony H. Anikeeff, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. John McMunn, Dept. of Navy, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action came before the court on defendant's motion for summary judgment. Plaintiff, on behalf of its subcontractor, C & B Steel, Inc., sought an equitable adjustment for time and money under its contract to construct personnel housing for the Navy. Defendant opposed.

## FACTS

On or about October 25, 1984, the United States, acting through the Naval Facilities Engineering Command, issued an Invitation For Bids for the construction of unaccompanied enlisted personnel housing at the Naval Training Center in San Diego, California. The proposed project involved the construction of four three-story barracks buildings, three core buildings, and a mechanical equipment building. The contract was awarded to plaintiff on December 31, 1984. The following specification, section 05120, was included in the contract:

3.1.3 Shop Painting: Except as otherwise specified, shop paint all structural steelwork, except zinc coated surfaces and steelwork to be embedded in concrete or mortar. Surfaces to be welded shall not be coated within ½ inch from the specified toe of the weld prior to welding, except that the paint will be allowed on surfaces on which metal decking or shear studs are to be welded. Ensure that surfaces are thoroughly dry and clean when the paint is applied. Do not paint in freezing or dry weather except under cover. Do not apply paint when the temperature is below 40 degrees F, or expected to drop to 32 degrees or below within 5 hours of completing the application, before the paint is completely dried. Do not apply paint to steel which is at a temperature that will cause blistering or porosity or will otherwise be detrimental to the life of the paint. Apply paint in a workmanlike manner and coat all joints and crevices thoroughly. Prior to assembly, paint all surfaces which will be concealed or inaccessible after assembly.

Plaintiff awarded a subcontract to C & B Steel, Inc. in January, 1985 for the structural steel portion of the project. C & B then contracted with Mr. Alonso Bolio to prepare the structural steel shop drawings. It soon became apparent to Mr. Bolio that an inconsistency existed between the structural steel specifications and the drawings of the contract. To resolve the conflict, Mr. Bolio prepared a formal Request for Information for C & B, dated May 2, 1985, that was forwarded through plaintiff to defendant. The Request for Information, which normally would be used to clarify matters during the bidding process before award, asked:

Detail D/A12 shows "fireproofing ½ thk. on stl. frames ⅝ thk. on metal decks." which [sic] members are fireproofed? are [sic] all the trusses and roof beams also fireproofed? please [sic] Clarify [sic]. The reason we ask is that usually steel that requires fireproofing is not prime painted.[1]

The detail mentioned in Mr. Bolio's request referred to a note in detail D, architectural drawing A12 (D/A12), indicating that some of the structural steel in that detail was to be fireproofed. To obscure matters, the extent of fireproofing was indicated by faint wavy lines drawn around the steel frames and metal roof decking. Similar lines appeared around the metal decking, but not the structural steel members, in details A, B, and C on drawing A12, though without corresponding notes as in detail D. Detail D/A12 also did not contain a "typical" note. To further muddy the waters, detail D/A12 was cross referenced so that it should have been found on drawing A3, but did not appear on that drawing. Conversely, detail D/A7/A12 (roof overhang) on drawing A7, which depicted a partial roof plan and roof details, was located where detail D/A12 should have been, but was not referenced on drawing A12. Finally, detail A on drawing S12, depicting a

---

**1.** The record indicated that the terms "prime" or "primed" were synonymous with "shop paint-ed."

cross sectional view of the same structural steel members as found in detail D/A12, contained no wavy lines or details indicating a fireproofing requirement. Aside from the notes on drawing A12, there was no other mention of or reference to the fireproofing of structural steel reflected in the contract specifications, drawings or provisions.

Defendant responded to the Request for Information of May 23, 1985 by informing plaintiff that detail D/A12 was an error, that "no fireproofing of roof structural steel [was] req'd" and that the steel was to be shop painted. Plaintiff objected to defendant's order and claimed an equitable adjustment for additional time and money. According to plaintiff, neither its bid nor C & B's bid to plaintiff included costs for shop painting or fireproofing the structural steel. In response to plaintiff's claim, the Resident Officer issued a final decision under the terms of the "Disputes" clause of the general provisions of the contract, in part, to wit:

> The contract specifications clearly define the requirement to shop paint all structural steel with the exception of the surfaces noted or otherwise specified. There is no exception to this requirement in the contract documents or reference in the painting requirements to any other standard being applicable. The assumption of C & B that a note relating to fireproofing removed this painting from the contract was unreasonable. One note on one portion of a detail without supporting specifications for fireproofing and notice of deletion of painting does not support this assumption. If C & B was confused or saw a conflict in the documents it was required to make an inquiry to the Government seeking clarification. The RFI [Request For Information] 4 months after the award was not timely, and an analysis of the statements in the RFI shows that there was doubt about which items received fireproofing and even went as far as to base the question on the specified painting of steel in the contract. This does not support your contention that prior to bid C &

B had not considered painting steel since it all was fireproofed.

> Further, your acceptance of the [sic] C & B's premise and lack of inclusion of fireproofing left the steel uncoated. If an error was made by C & B, the burden of providing steel, painted as specified, rests with you.

Issue was thus joined.

## DISCUSSION

The Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), gives this court jurisdiction over any express or implied-in-fact contract to which the United States is a party. As plaintiff's claim has been "finally decided" by the contracting officer, plaintiff's action is properly before this court.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). The substantive law applicable to the case determines what facts are material, and thus, only disputes over facts that might affect the outcome of the suit will properly preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). In this case the rules governing contract interpretation, issues of law, determine which facts are critical or irrelevant in relation to defendant's motion. *Anderson*, 477 U.S. at 251–53, 106 S.Ct. at 2511–12. Defendant has the burden of establishing that there is no genuine material fact in dispute and that it is entitled to judgment as a matter of law. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608. As the party opposing the motion, plaintiff has the burden of showing sufficient evidence, not necessarily admissible at trial, that there is a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Any evidence presented by plaintiff is to be believed and all justifiable inferences drawn in its favor. *Anderson*,

477 U.S. at 255, 106 S.Ct. at 2513; *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

In its motion for summary judgment, defendant argued that the disposition of this case involved issues of contract interpretation and, because there were no genuine material facts in dispute, it should prevail under the clear and unambiguous terms of the contract. Defendant maintained further, that any discrepancy in the contract was to be resolved, by its terms, in favor of the specifications. In the alternative, defendant argued that the alleged ambiguity was so serious and glaring that plaintiff's failure to timely notify defendant precluded it from recovery. Plaintiff countered that genuine issues of material fact abounded and that summary judgment was inappropriate. In addition, plaintiff argued that there was no discrepancy between the specifications and drawings and that the contract clearly did not require shop painting. If, however, there was a discrepancy, it would have to be resolved against defendant because the discrepancy would constitute a latent ambiguity.

After a thorough review of the pleadings and the substantive law involved in this case, the court finds that plaintiff has not identified any genuine issues of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. To create a genuine issue of fact, plaintiff must do more than present some evidence that a fact is disputed. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988). The Supreme Court has stated, "If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). "Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir. 1984). As such, this case is properly before the court for disposition on defendant's motion for summary judgment.

The determinative issue of this case is whether detail D/A12, providing for fireproofing, constituted an exception to the specification that all structural steel be shop painted, thereby absolving plaintiff of all responsibility to shop paint. As noted by both parties in their motions, this case turns on the interpretation of contractual terms. It is well settled that contract interpretation is a matter of law. *Dynamics Corp. of America v. United States,* 182 Ct.Cl. 62, 71–72, 389 F.2d 424, 429 (1968); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965); *Industrial Indem. Co. v. United States,* 14 Cl.Ct. 351, 356 (1988).[2]

Defendant's case was founded on the argument that any discrepancy between a specification and a drawing must be resolved in favor of the specification, as dictated by the contract's order of precedence clause. *See Franchi Constr. Co. v. United States,* 221 Ct.Cl. 796, 805, 609 F.2d 984, 990 (1979). That clause, a general term of most if not all public construction contracts, provided that "[i]n the case of difference between drawings and specifications, the specifications shall govern." The "[g]overnment authored the order of precedence clause as a mechanism to automatically remove conflict between specifications and drawings by assigning preeminence to the former." *Franchi,* 221 Ct.Cl. at 805, 609 F.2d at 989–90. Plaintiff advocated that detail D/A12 and related markings formed an express exception to the shop painting specification, and as such there was no conflict. Plaintiff erred in this regard. Plaintiff would have the court interpret the contract to find that it was not required to shop paint any of the structural steel on the job because of markings on the drawings, even though the scope of detail D/A12 clearly did not apply to all of the structural steel. The specifications stated that all structural steel was to be shop painted unless otherwise specified. Plaintiff's interpretation would have detail D/A12 destroy the specification. Plaintiff

---

**2.** While plaintiff relied to some extent on trade usage and custom, normally issues of fact, to support its interpretation of the contract, such matters are not here material. The determina-

tion of trade usage or custom is not at issue; rather, the issue involves the interpretation of a contract, a matter of law.

cannot be permitted to create conflict between a contract specification directing shop painting and a contract drawing ostensibly requiring fireproofing, and then convert that conflict into a directive not to shop paint any of the steel. Such result would effectively write out the shop painting specification. The order of precedence clause is directly applicable to this issue, and any conflict between plaintiff's interpretation of detail D/A12 and the specification must be resolved in favor of the specification requiring the shop painting of all the structural steel.

This case, however, warrants further review of the contract and the validity of plaintiff's position. The court's first responsibility in interpreting the contract at issue is "to ascertain analytically whether [or not] an ambiguity existed," *Enrico Roman, Inc. v. United States*, 2 Cl.Ct. 104, 106 (1983), specifically, whether the contract specifications and detail D/A12 were ambiguous. *Salem Eng'g and Constr. Corp. v. United States*, 2 Cl.Ct. 803, 806 (1983). In construing the terms and provisions of the contract, the court should ascribe a plain and ordinary meaning to the words, without a twisted or strained analysis. *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979); *Hol–Gar Mfg. Corp.*, 169 Ct.Cl. at 390, 351 F.2d at 976; *Aero Mayflower Transit Co. v. United States*, 162 Ct.Cl. 233, 237 (1963). The meaning is to be determined from the perspective of "a reasonably intelligent person acquainted with the contemporary circumstances." *Firestone Tire and Rubber Co. v. United States*, 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971); *ITT Arctic Servs. Inc. v. United States*, 207 Ct.Cl. 743, 752, 524 F.2d 680, 684 (1975).

█ A contract is ambiguous if it sustains the interpretations advanced by both parties. *Max Drill, Inc. v. United States*, 192 Ct.Cl. 608, 627, 427 F.2d 1233, 1245 (1970). The contract at issue required that all structural steel be shop painted "[e]xcept as otherwise specified." Section 05120, Part 3, subparagraph 3.1.3. There was no specification in the contract for fireproofing structural steel. The only mention of fireproofing was in detail D/A12, which clearly did not apply to all the structural steel. Plaintiff, allegedly after-the-fact, espoused an interpretation of detail D/A12 which would absolve it of all responsibility to shop paint any of the steel. Arguably, detail D/A12 could have acted as a minimal, or at the most, a partial exception to the shop painting requirement. From the record, for example, the court learned that fireproofing for practical reasons was done on site, not in the shop. Plaintiff, however, would have the court expand the scope of detail D/A12 to such an extent that would negate a major contract specification; the responsibility to shop paint all the structural steel. Carried one logical step further, such an interpretation would permit plaintiff to deliver structural steel to the jobsite neither shop painted nor fireproofed and therefore totally unprotected from the elements—the very antithesis of the purpose and meaning of specification 3.1.3. Yet plaintiff would have the court believe that it, a qualified or at least somewhat experienced contractor, would actually plan to deliver unprotected steel to the site. Such an act would be unconscionable, especially if this was what plaintiff intended from the outset of the contract.

█ Plaintiff's interpretation would effectively eliminate the shop painting specification from the contract. If possible, the court must give reasonable meaning to all parts of an instrument rather than leave a portion of it useless. *Martin Lane Co. v. United States*, 193 Ct.Cl. 203, 215, 432 F.2d 1013, 1019 (1970); *Industrial Indem. Co. v. United States*, 14 Cl.Ct. 351, 356 (1988). An interpretation that effectively deletes a major portion of the contract cannot be sanctioned by the court. *W.G. Cornell Co. v. United States*, 179 Ct.Cl. 651, 666–67, 376 F.2d 299, 309 (1967). Further violence was done to plaintiff's position by C & B's Request For Information, which implicitly recognized that, at the very least, part of the structural steel was to be shop painted. C & B queried, "[w]hich members are fireproofed ... [t]he reason we ask is that usually steel that requires fireproofing is not prime painted."

The court thus finds that even though the contract in dispute was not clear, plaintiff's interpretation that it was not required to shop paint any of the structural steel was conclusively not supported by the contract. The contract thus may not be challenged for ambiguity. *Bowers Hydraulic Dredging Co. v. United States,* 211 U.S. 176, 29 S.Ct. 77, 53 L.Ed. 136 (1908).

Assuming, *arguendo*, that the court found the contract drawings and terms to have created an ambiguity, the court would find that ambiguity so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification. *See e.g., Newsom v. United States,* 230 Ct.Cl. 301, 303, 676 F.2d 647, 650 (1982); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456 (1985). Plaintiff's failure to satisfy this duty prior to the execution of the contract precludes consideration of whether plaintiff's interpretation should be adopted. *George Hyman Constr. Co. v. United States,* 215 Ct.Cl. 70, 81, 564 F.2d 939, 945 (1977); *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 504 (1963). A patent ambiguity cannot be defined generally, but must be found on an ad hoc basis by looking to what a reasonable man would find patent and glaring. *Brezina Constr. Co. v. United States,* 196 Ct.Cl. 29, 34, 449 F.2d 372, 375 (1971).

Where there are apparent and repeated inconsistencies within a contract, especially on the face of papers that deal with a major matter, the contractor has the duty to clarify such inconsistencies prior to bidding. *J.B. Steel, Inc. v. United States,* 810 F.2d 1139, 1141 (Fed.Cir.1987). Here, as claimed by plaintiff, the requirement to shop paint all the structural steel, as opposed to none, allegedly increased the subcontractor's costs by 30 percent, which this court considers to be a major matter. The contract, as noted by plaintiff and admitted by defendant, contained inconsistent instructions on its face. The specifications directed that plaintiff shop paint all structural steel except as specified otherwise. Detail D/A12 and related markings on parts A, B and C of drawing A12, however, provided for the fireproofing of various structural steel members. There was no other mention of fireproofing within the contract. Detail D/A12 did not direct plaintiff as to which steel members were to be fireproofed, and thus, as plaintiff argued, not shop painted. The scope of detail D/A12 was further confused by the lack of designated cross references; detail D/A12 was cross referenced to drawing A3, though that detail was not reflected on that drawing. Conversely, detail D/A7/A12 on drawing A7, which was located where detail D/12 should have been, was not referenced on drawing A/12. In effect, detail D/A12 was an isolated drawing unrelated to any other drawing or specification within the contract. Inasmuch as detail D/A12 did not instruct plaintiff to shop paint all the structural steel, plaintiff was under a duty to ascertain from defendant, prior to bidding, which steel members were and were not to be shop painted.

Despite this inconsistency, it is clear that the fireproofing detail did not apply to all of the structural steel in the contract, and even a cursory reading of the various documents would have brought that fact to light. A bidder has a duty to scrutinize the solicitation, including the drawings and specifications, for potential problems prior to bidding. *J.B. Steel,* 810 F.2d at 1141. Instead, plaintiff waited four months after the contract was awarded before inquiring which structural steel members were to be fireproofed, thus clarifying which steel members were to be shop painted. Purportedly, if asked prior to bidding, defendant would have informed plaintiff that fireproofing was not required and to shop paint all the structural steel per paragraph 3.1.3. Plaintiff had the duty to clarify this inconsistency before the contract was awarded. Therefore, even if the contract was found to be ambiguous, plaintiff failed to satisfy its duty to seek clarification, and thus plaintiff's position cannot be sustained by this court.

Again, assuming *arguendo*, that these facts constituted a latent ambiguity in the contract, it would then be the duty of the court to determine whether plaintiff's interpretation of the contract was reason-

able. *Newsom*, 230 Ct.Cl. at 304, 676 F.2d at 650. The familiar rule that non-patent ambiguities be resolved against the drafter is "subject to the condition that the alternative interpretation tendered by the other party be a reasonable one." *William F. Klingensmith, Inc. v. United States*, 205 Ct.Cl. 651, 657, 505 F.2d 1257, 1261 (1974); *John C. Grimberg Co. v. United States*, 7 Cl.Ct. 452, 456 (1985). Plaintiff's interpretation need only be within the "zone of reasonableness," with defendant shouldering the major task of ensuring that the words of the agreement communicate the proper notions. *WPC Enterprises, Inc. v. United States*, 163 Cl.Ct. 1, 6, 323 F.2d 874, 876–77 (1963). The issue is a question of law for the court to decide. *See e.g., Klingensmith*, 205 Cl.Ct. at 656, 505 F.2d at 1260; *Grimberg*, 7 Cl.Ct. at 456. Plaintiff allegedly based its bid and its present argument on the position that, because detail D/A12 and related markings indicated that some of the structural steel was to be fireproofed, it was not required to shop paint any of the steel. This interpretation would nullify specification section 05120, paragraph 3.1.3 of the contract. An interpretation which would require the complete disregard of an entire section of a contract will not be considered reasonable. *Klingensmith*, 205 Ct.Cl. at 659, 505 F.2d at 1262; *Merando v. United States*, 201 Ct.Cl. 28, 30, 475 F.2d 603, 605 (1973).

 Plaintiff repeatedly relied on trade custom to support its interpretation. While custom is not determinative of the issues involved in this case, it may be useful in analyzing the reasonableness of plaintiff's position. It may well be trade custom not to shop paint structural steel that is to be fireproofed. Such custom, however, does not render more reasonable plaintiff's interpretation that one detail, not marked with a "typical" note or cross referenced to any other section of the contract, eviscerates an entire contract specification. Trade custom or usage cannot be used to contradict plain contractual language. *George Hyman Constr. Co. v. United States*, 215 Ct.Cl. 70, 81, 564 F.2d 939, 945 (1977). Nor would custom support the delivery of unprotected structural steel to the job site, susceptible to the elements and subsequently, corrosion. Moreover, defendant, albeit inartfully, contracted to have all the structural steel shop painted and was entitled to receive what it contracted for, even if it requested plaintiff to shop paint steel to be fireproofed. As such, assuming that the contract was ambiguous and the ambiguity latent, plaintiff's interpretation was unreasonable and could not be supported by the court. *Grimberg*, 7 Cl.Ct. at 456.

## CONCLUSION

For the foregoing reasons defendant's motion for summary judgment is granted. Plaintiff's interpretation of the contract cannot be sustained in light of the order of precedence clause which required that all conflicts between specifications and drawings be resolved in favor of the specifications. By alleging that detail D/A12 applied to all the structural steel in the contract, plaintiff placed the contract specifications and drawings at odds with each other. Regardless of the order of precedence clause, plaintiff failed its duty to seek clarification prior to the bidding of the contract. Plaintiff's interpretation could also not be supported as a latent ambiguity; it was not reasonable. The complaint is dismissed and the Clerk is directed to take appropriate action. Costs to defendant.