**Kaleta L. BLOUGH, doing business as Steel Coat, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 467–86–C.**

United States Claims Court.

June 9, 1989.

Paul F. Dauer, Sacramento, Cal., for plaintiff.

Howard Lipper, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen and Mary Mitchelson, Washington, D.C., for defendant. Jerry Robinson, U.S. Postal Service, of counsel.

## OPINION and ORDER

TURNER, Judge.

This opinion addresses cross-motions for summary judgment.[1] The core issue presented in each motion is whether the parties' 1984 contract for on-site modification of postal collection boxes in the Sacramento, California area was a lump sum or a unit price contract. Plaintiff (Steel Coat) argues that the parties entered a fixed price, lump sum contract for $21,700 of which defendant still owes $8,695.50. Defendant counters that the parties entered a unit price contract which entitled plaintiff to $15.50 for each postal box plaintiff modified, and that, because plaintiff was required to modify only 839 boxes, defendant's payment of $13,004.50 to plaintiff has fulfilled defendant's obligations. It is concluded that the contract was a lump sum contract and that plaintiff is entitled to judgment for the unpaid portion of the contract price. Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied.

### I

In December 1984, the U.S. Postal Service solicited bids for on-site modification of postal collection boxes in the Sacramento, California Management Sectional Center (MSC) delivery area.[2] The solicitation

---

1. Plaintiff's Motion for Summary Judgment filed November 6, 1986; Defendant's Cross-Motion for Summary Judgment filed December 30, 1986.

2. The United States contains 133 U.S. Postal Service Management Sectional Center (MSC) de-

livery areas. U.S. Postal Service, *National Five–Digit Zip Code & Post Office Directory* (1989) at 2524. The Sacramento MSC (location of the subject contract) covers some 10,000 square miles and includes California's Amador, El Dorado, Nenada, Placer, Sacramento, Solano, Sut-

documents consisted of a six-page Postal Service Form 7322 (entitled Construction Contract) and several attachments thereto. The first page of Form 7322 contained three sections entitled SOLICITATION, OFFER and AWARD.

The SOLICITATION section referred bidders to several attachments concerning, *inter alia,* scope of work. One of the incorporated scope-of-work documents was a work sheet designated Exhibit A which advised bidders of the work to be accomplished on-site with respect to approximately 1,400 collection boxes. The work sheet advised that detailed maps, showing exact locations of boxes to be modified, would be furnished to the successful contractor upon award and included the following formula for computing a bid total: "Job Cost per Box: $_____ × 1400 ea. = $_____ Total."

An incorporated addendum to the SOLICITATION section declared:

> Offerors are invited to personally visit the site or take such other steps as may be reasonably necessary to ascertain the requirements for performing the work described in the Scope of Work section of this solicitation and which can affect the cost of the work. Failure to do so will not relieve offerors from the responsibility for estimating properly the difficulty or cost of successfully performing the work.

Paragraph 2 of the Solicitation Instructions and Conditions contained a similar caveat (Form 7322, p. 2).

The OFFER section required bidders to complete the following: "TOTAL BID: (In Words) _____ $_____ including all applicable ... taxes." It was to this line that the work sheet directed bidders to enter the "price." Finally, the AWARD section, to be completed by the Postal Service, provided: "The above offer is accepted in the amount of $____."

Pages two through six of Form 7322 contained Solicitation Instructions and Conditions. Paragraph 12(c) of the Solicitation Conditions, pertaining to award of con-

tracts, provided: "The Postal Service may accept any item or combination of items of an offer unless precluded by the solicitation or the offeror includes restrictive limitation."

On December 17, 1984, Steel Coat responded to the solicitation. Its response included the first page of Form 7322 containing the OFFER section and the Exhibit A work sheet on which it had completed the price calculation formula by stating $15.50 as its job-cost-per-box and $21,700 as its total price. Instead of entering a total "price" figure on the first page of Form 7322 as the work sheet suggested, plaintiff wrote "SEE EXHIBIT A" in Form 7322's "TOTAL BID" blank.

On January 8, 1985, the Postal Service's contracting officer completed the AWARD section of Form 7322 to read: "The above offer is accepted in the amount of $21,700." Similarly, the contracting officer's "award/notice to proceed" letter to plaintiff dated January 7, 1985 stated: "[T]he attached subject contract is awarded to you in acceptance of your offer ... FOR THE SUM OF $21,700."

Defendant then supplied Steel Coat with the "detailed maps" described in the work sheet. Because of erroneous information contained in the maps, plaintiff incurred unforeseen expenses. Further, the actual number of Sacramento-area postal boxes requiring modification proved to be just 839—fewer than 60% of the Postal Service's 1400–box work sheet approximation.

Steel Coat completed all work under the contract by June 30, 1985. By letter dated June 29, 1985, plaintiff requested a "modified cost per unit" of $23.25, citing unforeseen costs attributable to defendant's inadequate maps. In a subsequent letter sent prior to receipt of any response to its June 29 correspondence, Steel Coat "superseded" its June 29 billing, characterized the contract as "fixed price or lump sum" and demanded payment of $21,700.

Defendant refused to pay the "lump sum" amount, recommending instead the following two-step procedure: (1) Steel

ter, Yolo and Yuba counties. App. to Def. Cross–Motion for Summary Judgment at 1, 47.

Coat would first accept payment of $13,-004.50 (for modification of 839 boxes at $15.50 per box) and then (2) Steel Coat would submit an invoice pursuant to the changes clause of the contract for the additional costs it incurred because of inadequate maps. In making this proposal, defendant conceded that Steel Coat had incurred unforeseen expenses attributable to defendant's maps (Exhibit F, App. to Def. Opp.).

Steel Coat rejected defendant's proposed solution and protested to the contracting officer. On December 13, 1985, the contracting officer determined that the contract was not for a lump sum, that Steel Coat had not submitted an invoice for additional costs as recommended, and that Steel Coat was entitled only to $13,004.50. In July 1986, plaintiff instituted this action.

## II

Steel Coat's "lump sum" contention is based on (1) the language of the "AWARD" section of Postal Service Form 7322, (2) the language of defendant's "award/notice to proceed" letter and (3) the differences between language of this contract and language of another contemporaneous contract between the parties for similar work which was plainly a unit price contract.

In its opposition and cross-motion for summary judgment, defendant argues that a ruling for Steel Coat would ignore the work sheet's unit price term. Defendant also asserts that Steel Coat's June 29, 1985 letter constituted predispute conduct demonstrative of the parties' understanding that this was a unit price contract.

## III

Contract interpretation is "a harmonizing process in which the various parts of a disputed contract are to be construed as a whole to give meaning to all of its provisions." *Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1057 (Fed. Cir.), *cert. denied*, 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983); *see International Business Investments, Inc. v. United States*, 17 Cl.Ct. 122, 126–27, (Cl.Ct., 1989)

and cases therein cited. Accordingly, this court

> follow[s] the established general rules that provisions of a contract must be so construed as to effectuate its spirit and purpose, that it must be considered as a whole and interpreted so as to harmonize and give meaning to all of its provisions, and that an interpretation which gives a reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.

*Arizona v. United States*, 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978). Here, defendant's interpretation does not give "a reasonable meaning to all parts" of the contract. *Id.* Defendant does not attempt to explain the award language, in which the Postal Service's contracting officer unequivocally stated on two occasions that this contract was for a lump sum. Nor does defendant satisfactorily account for the condition of Form 7322 as it was supplied to bidders. The "OFFER" section requested a "TOTAL BID" and reasonably appeared to call for a single dollar figure. Defendant certainly could have altered this section of the form to read "TOTAL BID *PER BOX*" or could have made some like alteration had it intended this to be a unit price contract. Similarly, defendant could have inserted the phrase "not to exceed" in the "AWARD" section (as it had in the parties' contract for modification of postal boxes in Kansas) and referenced the per box price if a unit price contract had been its intention.

On the other hand, plaintiff's interpretation arguably makes the job-cost-per-box figure "insignificant, meaningless [and] superfluous." *Id.* Plaintiff offers the following rationale for the Postal Service's form which included a space for a unit cost term:

> Plaintiff ... would guess that Defendant wanted to know a [per box] price in the event a change order was necessary, or in the event it wanted to add collection

boxes to be modified in other outlying areas. Pl. M/S.J. at 4. If defendant's purpose in requesting bidders' per box cost were what plaintiff suggests, defendant could have performed the simple arithmetic. Nevertheless, the space calling for job-cost-per-box was on a work sheet which presumably was intended to assist bidders in calculating a total bid. Further, a reading of the contract which completely ignored its award language and solicitation format and exalted half of an equation on an appended work sheet over the unequivocal, prominent signature page, would hardly harmonize and give meaning to all provisions.

Another contract between these parties for similar work in Kansas provides further support for characterizing this as a lump sum contract.[3] The other contract called for substantially similar work to be compensated on a per-unit basis and the language of that contract differed in key respects from that of this one. For example, the Kansas contract was awarded in an amount "not to exceed $64,000" and contained an "Estimated Requirement—Variation in Quantity" clause. Such language is conspicuously absent from the Sacramento contract.

Defendant cites Steel Coat's letter dated June 29, 1985 and asserts that it is a cardinal principle of contract-interpretation jurisprudence that contracts "must be interpreted in accordance with the parties' understanding as shown by their conduct before the controversy." *Julius Goldman's Egg City*, 697 F.2d at 1058; *accord Big Chief Drilling Co. v. United States*, 15 Cl.Ct. 295, 301 (1988). Unquestionably, it is a "truism that how the parties act under the arrangement, before the advent of controversy, is often more revealing than the dry language of the written agreement by itself." *Macke Co. v. United States*, 199 Ct.Cl. 552, 556, 467 F.2d 1323, 1325 (1972); *accord Alvin, Ltd. v. United States Postal Service*, 816 F.2d 1562, 1566 (Fed.Cir.1987). And it is also clear that plaintiff's June 29

letter—written prior to the advent of this dispute—objectively manifested the understanding that the agreement was a unit price contract. However, defendant's conduct in composing the award language and award letter was also pre-dispute, and it too objectively manifested an understanding concerning mode of payment under this contract which is contrary to its present position. Furthermore, Steel Coat's June 29 letter was not drafted by an attorney and could not, standing alone, have the effect of changing the nature of this contract.

Both parties have cited facts and law which tend to support their respective positions. Both parties have taken pre-dispute positions contrary to their current positions. But to the extent that any doubt remains, it is removed by the venerable rule of *contra proferentem* under which contractual language must be construed against the drafting party. *See PBI Electric Corp. v. United States*, 17 Cl.Ct. 128, 132 (Cl.Ct.1989) and cases therein cited. The Supreme Court has declared that "[t]his principle is appropriately accorded considerable emphasis" in cases where the government was the drafting party, "because of the [g]overnment's vast economic resources and stronger bargaining position in contract negotiations." *United States v. Seckinger*, 397 U.S. 203, 216, 90 S.Ct. 880, 887, 25 L.Ed.2d 224 (1970). The rule applies to a contract-interpretation case if (1) the contract is ambiguous, i.e., it sustains the interpretations advanced by both parties, e.g., *Max Drill, Inc. v. United States*, 192 Ct.Cl. 608, 627, 427 F.2d 1233, 1245 (1970); *Avedon Corp. v. United States*, 15 Cl.Ct. 771, 776 (1988), (2) the ambiguity is not "patent", e.g., *Newsom v. United States*, 230 Ct.Cl. 301, 303, 676 F.2d 647, 649 (1982), and (3) the non-drafting party's interpretation is a reasonable one. *E.g., Perry & Wallis, Inc. v. United States*, 192 Ct.Cl. 310, 316, 427 F.2d 722, 725–26 (1970).

Assuming that this contract sustains both parties' interpretations and is there-

---

**3.** Plaintiff asserts that a third contract between the parties for repair of postal boxes in New York was a clear unit price agreement (Pl. · M/S.J. at 5, App. at 2) but has furnished no detail or documents pertaining thereto.

fore ambiguous, it is concluded that such ambiguity is not patent. "A patent ambiguity cannot be defined generally, but must be found on an ad hoc basis by looking to what a reasonable man would find patent and glaring." *Avedon Corp.*, 15 Cl.Ct. at 777, *citing Brezina Constr. Co. v. United States*, 196 Ct.Cl. 29, 34, 449 F.2d 372, 375 (1971). The temporal focus of the patent ambiguity inquiry is the pre-bid period: "If a patent ambiguity is found in a [government-drafted, proposed] contract, the contractor has a duty to inquire of the contracting officer the true meaning of the contract [solicitation] before submitting a bid." *Newsom*, 230 Ct.Cl. at 303, 676 F.2d at 649. A reasonable man in plaintiff's position, especially given the condition of the solicitation documents, would not have found a "patent and glaring" ambiguity here, *Brezina Constr. Co.*, 196 Ct.Cl. at 34, 449 F.2d at 375, and the discussion above makes clear that plaintiff's interpretation is within the "zone of reasonableness." *WPC Enterprises, Inc. v. United States*, 163 Ct.Cl. 1, 6, 323 F.2d 874, 876–77 (1963).

Any possible ambiguity in the solicitation forms was removed by the award and confirmed by the award letter which stated, respectively, that plaintiff's offer was accepted "in the amount of $21,700" and "FOR THE SUM OF $21,700." Neither the award nor the award letter made reference to or in any way suggested a unit price. This conduct by the Postal Service stands in stark contrast to its handling of a substantially contemporaneous contract with plaintiff for replacement of collection boxes in Kansas. *See* App. to Pl. M/S.J., Exhibit D. There, the government-furnished work sheet called only for unit-price bids and the contract was awarded for an amount "NOT TO EXCEED" a stated figure. The Kansas contract demonstrates that when the Postal Service intended to enter a unit price contract, it knew how to draft one.

To summarize, plaintiff has persuaded that notwithstanding its June 29 letter and

the contract's work sheet which asked for job-cost-per-box, harmonious reading of all parts of this contract, particularly its formula for statement of "total bid" and the award language, tips the balance in favor of the conclusion that the contract provided for payment of a lump sum.[4] To the extent that pre-bid ambiguity existed, such ambiguity was not patent, the rule of *contra proferentem* applies, and since plaintiff's interpretation is within the "zone of reasonableness," it should prevail.

## IV

Plaintiff's motion for summary judgment is GRANTED. Defendant's cross-motion for summary judgment is DENIED. It is ORDERED that judgment be entered in favor of plaintiff in the principal sum of $8,695.50, together with interest thereon from September 11, 1985 as provided by 41 U.S.C. § 611.

---

**4.** Both parties have argued that provisions within the Postal Contracting Manual support their respective interpretations. However, it is concluded that the Manual provides definitive support for neither side. In any event, deciding the relative merit of the parties' Postal Contracting Manual arguments is unnecessary to resolution of this case.