NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JEMISON & PARTNERS, INC.,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2023-1773

---

Appeal from the Armed Services Board of Contract Appeals in No. 62928, Administrative Judge Michael N. O'Connell, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided: April 16, 2024

---

WILLIAM LEE KOHLER, Kohler Construction Law, New Orleans, LA, for appellant.

ANNE DELMARE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

---

Before PROST, CHEN, and HUGHES, *Circuit Judges*.

PER CURIAM.

Appellant Jemison & Partners, Inc. (Jemison) and the Army Corps of Engineers (Corps) entered into a contract for greenspace restoration in 2019. That restoration included placing topsoil along a portion of Jefferson Avenue's median in Orleans Parish, Louisiana. For the topsoil placement, the parties dispute whether their contract requires a unit-price or lump-sum payment. That is, does the contract require the Corps to pay Jemison for the actual quantity of topsoil placed or a lump sum based on the quantity of topsoil the parties estimated would be placed?

Jemison appealed to the Armed Services Board of Contract Appeals (Board), insisting that it had been underpaid by $53,104.80 because the contract required a lump-sum payment for topsoil placement. The Board disagreed and found that the contract required per-unit payment for the topsoil placement. *See In re Jemison & Partners, Inc.*, ASBCA No. 62928, 23-1 B.C.A. ¶ 38,249, 2022 WL 17970459 (Dec. 5, 2022) (*Decision*).[1] Jemison appeals the Board's determination. Appellee Secretary of the Army (Secretary) counters that we lack jurisdiction to hear this appeal and, in the alternative, argues that the Board correctly interpreted the contract. For the following reasons, we conclude that we have jurisdiction, and we *affirm* the Board's decision.

---

[1]    Because the reported version of the Board's decision is not paginated, citations in this opinion are to the version of the Board's decision included in the Joint Appendix (J.A. 1–9). For example, *Decision* at 1 is found on J.A. 1.

BACKGROUND

A.

On November 16, 2018, the Corps issued Solicitation W912P8-19-R-0005 for the planting of trees along a stretch of Jefferson Avenue's median in Orleans Parish, Louisiana. J.A. 32–143. The project included, among other things, controlling traffic, excavating and filling, planting trees and other plants, and placing topsoil, mulch, and sod. J.A. 261–96. For the topsoil portion, the solicitation listed an "Estimated Quantity" of 2,355 cubic yards. J.A. 39.

Following the issuance of the solicitation, Jemison and the Corps began negotiating a contract. Jemison submitted multiple bids, met with the Corps, and asked questions, which the Corps answered. They ultimately agreed to a contract. *See* J.A. 199–313 (the contract).

That contract listed nine item numbers, and each item number included a description of the supplies and/or services, a quantity, a unit, a unit price, an amount, and a net amount. The first two item numbers are reproduced below:

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | | 1 | Job | $348,808.57 | $348,808.57 |
| | Mobilization and Demobilization | | | | |
| | FFP | | | | |
| | FOB: Destination | | | | |
| | PURCHASE REQUEST NUMBER: W42HEM83244147 | | | | |
| | | | | NET AMT | $348,808.57 |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0002 | | 2,355 | Cubic Yard | $84.00 | $197,820.00 |
| | Topsoil | | | | |
| | FFP | | | | |
| | FOB: Destination | | | | |
| | PURCHASE REQUEST NUMBER: W42HEM83244147 | | | | |
| | | | | NET AMT | $197,820.00 |

J.A. 201.  Notably, the unit for "Mobilization and Demobilization" is "Job" whereas the unit for "Topsoil" is "Cubic Yard."  Units for other item numbers include "Square Foot" for Sod and "Each" for Magnolia grandiflora, a type of flower.  J.A. 201–02.

The value in the Amount column is determined by multiplying the quantity by the unit price.  The sum of the Amount column for all nine entries is $747,298.57, which is the "Total Award Amount" listed on the front page of the contract.  J.A. 199, 239.

The contract also includes a "Measurement and Payment" section that describes how the topsoil is to be measured and what is included in the payment price:

> Measurement for work required under this section shall be an in place topsoil cubic yard measurement.  The topsoil quantities are provided as an aid to bidders only.  The contractor shall take measurements subtracting rootball volume at each area requiring excavation and soil replacement.  Payment for all work specified in this section including material, equipment, labor and any other incidental work necessary for providing, installing and maintaining the topsoil will be considered completely covered under the contract price for topsoil as indicated in Section 00 41 00 Bid Schedule.

J.A. 274.

The referenced Bid Schedule provides a summary of the estimated contract price for each item number:

| Item No | Description | QTY | Unit | Unit Price | Total Amount |
|---|---|---|---|---|---|
| 0001 | Mobilization and Demobilization | 1 | JOB | $348,808.57 | $348,808.57 |
| 0002 | Topsoil | 2355 | CY | $84.00 | $197,820.00 |
| 0003 | Sod | 27210 | SF | $2.00 | $54,420.00 |
| 0004 | *Magnolia grandiflora* | 44 | EA | $850.00 | $37,400.00 |
| 0005 | *X Butiagrus nabonnandii* | 10 | EA | $2,400.00 | $24,000.00 |
| 0006 | *Lagerstroemia indica* | 41 | EA | $850.00 | $34,850.00 |
| 0007 | *Chionanthus retusus* | 14 | EA | $825.00 | $11,550.00 |
| 0008 | *Magnolia virginiana* | 2 | EA | $850.00 | $1,700.00 |
| 0009 | *Ilex x attenuata* | 42 | EA | $875.00 | $36,750.00 |
| | | | | TOTAL PRICE | **$747,298.57** |

J.A. 239.

The parties also incorporated Federal Acquisition Regulation (FAR) 52.212-4 into the contract. J.A. 199. That regulation discusses, among other things, how the contractor will submit invoices and how the Government will make payments. For invoices, "[t]he Contractor shall submit an original invoice," which "must include . . . [d]escription, quantity, unit of measure, unit price and extended price of the items delivered." 48 C.F.R. § 52.212-4(g)(1)(iv). For payment, the regulation provides that "[p]ayment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract." 48 C.F.R. § 52.212-4(i)(1).

Finally, the contract includes some of the questions and answers that were exchanged during negotiations. As an example, Jemison asked the following question, and the Corps provided the following answer:

> Q. "[C]an we retain the same estimated quantities for top soil and add a qualification in the revised proposal that the actual quantities utilized will be verified by the [Corps] in the field? It is our understanding the [Corps] carefully confirms material quantities (such as top soil) in the field as work progresses. We understand that the [Corps] will only pay for verified materials used in the project."

> A. "Measurement for this work shall be an in place top soil cubic yard measurement verified by the government. The topsoil quantities are provided as an aid to the bidder. The actual topsoil quantities used cannot exceed the government's estimated quantities without a contract modification."

J.A. 213.

## B.

Once the contract was executed, Jemison began working on the project. *Decision* at 4 ¶ 11. Jemison submitted two requests for payment for its work through April 30 and August 12, 2019, respectively. *Id.* at 4 ¶¶ 11–12. The first invoice requested payment for placing 452.78 cubic yards of topsoil at the $84 per cubic yard rate, and the second requested payment for placing an additional 1,206.61 cubic yards at the same rate. *Id.* The Corps approved these payments. *Id.*

The present dispute arose with the third payment request, which Jemison submitted on October 19, 2019. *Id.* at 5 ¶ 15. Jemison requested $58,432—the full $197,820 initially quoted for topsoil placement less the amount already paid. *Id.* The contracting officer's representative informed Jemison that it was entitled to payment for only the actual quantity of topsoil placed. *Id.* Jemison then submitted a revised pay request seeking payment for placing 63.41 cubic yards, amounting to $5,326.44. *Id.* The Corps approved that payment. *Id.*

All in all, Jemison placed and was paid for 1,722.8 cubic yards of topsoil rather than the estimated 2,355 cubic yards identified in the contract. *Id.* at 5 ¶ 14.

## C.

On January 4, 2021, Jemison submitted to the contracting officer a claim in the amount of $53,104.80 for the unpaid quantities of topsoil. J.A. 423–24. The contracting officer denied this claim, finding the contract entitled Jemison to payment for only the topsoil it placed. *See* J.A. 553–54.

Jemison appealed the contracting officer's final decision to the Board. The Board denied Jemison's appeal on December 5, 2022, finding that "[r]eading the contract as a whole, the Board agrees with the Corps that Jemison was entitled to payment only for actual quantities placed." *Decision* at 6, 8.

On December 7, 2022, the Board's Recorder's Office emailed Jemison's counsel a copy of the Board's decision. ECF No. 1-2 at 4; J.A. 9. Jemison's appeal to this court was received on April 14, 2023. ECF No. 1.

## DISCUSSION

On appeal, Jemison argues that the Board erred in interpreting the contract. According to Jemison, the contract is properly understood as requiring lump-sum payment, rather than per-unit payment, for topsoil placement.

The Secretary counters that we lack jurisdiction over this case because Jemison's appeal is untimely. On the merits, the Secretary contends that the Board properly construed the contract as requiring per-unit payment for topsoil placement.

We first address whether we have jurisdiction and then address the contract-interpretation issue.

## I.

We have exclusive jurisdiction to hear "an appeal from a final decision of an agency board of contract appeals pursuant to section 7107(a)(1) of title 41." 28 U.S.C. § 1295(a)(10). Under that statute, a contractor may appeal the Board's decision "within 120 days from the date the contractor receives a copy of the decision." 41 U.S.C. § 7107(a)(1)(A). That deadline "defines the jurisdiction of this court" and cannot be waived. *Placeway Const. Corp. v. United States*, 713 F.2d 726, 728 (Fed. Cir. 1983).

The Secretary argues that Jemison failed to establish that we have jurisdiction. Specifically, the Secretary contends that the appeal is untimely because Jemison failed to file its appeal within 120 days of the Board's December 7, 2022 email.

We conclude that we have jurisdiction. On the facts of this case, Jemison has shown that it did not receive the Board's decision until April 7, 2023. Jemison's appeal was filed within 120 days of April 7, 2023. ECF No. 1 (received April 14, 2023). Jemison's appeal is therefore timely.

The Secretary's narrow focus on the date that the Board emailed a copy of its decision misunderstands the statutory scheme. The relevant date is 120 days after "the contractor receives a copy of the decision." 41 U.S.C. § 7107(a)(1)(A); *see Parsons Evergreene, LLC v. Sec'y of the Air Force*, 968 F.3d 1359, 1367 (Fed. Cir. 2020) (dismissing appeal "filed 255 days after [party] received a copy of the final decision"); *Placeway Const. Corp.*, 713 F.2d at 727 ("[A]ppellant received notice on August 19, 1982, of the adverse board decision rendered on August 13, 1982."). The date the contractor received a copy of the decision is not necessarily the same date that the Board emailed the decision to the contractor, and the record shows that to be the case here.

Here, Jemison's counsel submitted a sworn declaration stating that he first received notice of the Board's decision on April 7, 2023. ECF No. 1-2 at 2–3. This declaration explains that his firm could not receive any emails sent from December 2 through 12, 2022, because of a ransomware attack on its email service provider. *Id.* Jemison's counsel became aware of the decision on April 7, 2023, when he checked the Board's reported decisions. *Id.* at 3. That same day, he called the Board's Recorder's Office and explained that he had not received notice of the decision when it originally issued. *Id.* The Recorder's Office then emailed him a copy of the decision on April 7, 2023. *Id.*

The Secretary does not challenge these factual assertions, and the Board's interactions with Jemison's counsel are consistent with the declaration's recounting of email service problems. The Board's December 7, 2022 email requested that Jemison's counsel "acknowledge receipt of the attached Decision by return email." ECF No. 1-2 at 4. Yet there is no evidence before us that Jemison's counsel responded to that email. Jemison's counsel also attached to the declaration an email showing that the Recorder's Office "resent" the decision via email "at the request of [Jemison's] counsel per [its] phone call . . . on April 7, 2023." *Id.*

Based on these facts, we find that Jemison provided sufficient evidence for us to determine that it timely filed its appeal.

## II.

"The interpretation of a contract or solicitation is a question of law . . . ." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). We "review a contract board's decision on a question of law de novo." *DAI Glob. v. Adm'r of the United States Agency for Int'l Dev.*, 945 F.3d 1196, 1198 (Fed. Cir. 2019).

According to Jemison, the contract should be viewed as requiring a lump-sum payment rather than per-unit payment for topsoil placement. We agree with the Board, however, that the contract is best understood as requiring per-unit payment. The contract differentiated between the item numbers that were paid for as a lump sum and those that were paid for per-unit. For example, the contract priced mobilization and demobilization as a lump sum because it specified the unit was "Job." J.A. 201. In contrast, topsoil's unit—"Cubic Yard"—indicates that topsoil would be paid for per-unit. *Id.* This difference shows that the parties knew how to specify a lump-sum payment for completing a "job" but did not do so for the topsoil item number.

The contract negotiations, which are included in the contract, also demonstrate that the contract required per-unit payment for the topsoil item number. Jemison understood that the Corps "carefully confirms material quantities (such as top soil) in the field as work progresses" and that the Corps "will only pay for verified materials used in the project." J.A. 213. Jemison therefore acknowledged it was to be paid for only the topsoil that was actually placed.

Jemison's argument to the contrary is that the contract provides a "Total Award Amount" of $747,298.57, and the contract never expressly states that payment will be on a per-unit basis. In raising this argument, Jemison relies on *Blough v. United States*, 17 Cl. Ct. 186, 186 (1989), in which the Claims Court found that a contract for modifying postal boxes was a lump-sum contract. This argument is unavailing.

In *Blough*, the solicitation estimated that 1,400 postal boxes would be modified, but ultimately the contractor was required to modify only 839 boxes. *Id.* at 186–87. The solicitation attached a document that included the following formula—"Job Cost per Box: $____ x 1400 ea. = $____ Total." *Id.* at 187. But the offer section required the bidders to enter only one total bid, and the award section provided

without reservation that "[t]he above offer is accepted in the amount of $\_\_\_\_." *Id.* The Claims Court therefore found that the contract required a lump-sum payment, in part, because the "contracting officer unequivocally stated on two occasions that this contract was for a lump sum." *Id.* at 188.

*Blough* is distinguishable because the present contract does not include a lone contract price. Jemison was required, in the contract, to submit separate prices for nine item numbers, eight of which were based on estimated quantities and corresponding unit prices. J.A. 201–03, 239. The "Total Award Amount" that Jemison points to is simply equal to the sum of the entries in the Amount column for each of the nine item numbers. J.A. 199, 239. It follows that if the amount of one of those item numbers is reduced—e.g., the entry for topsoil placement—then the Total Award Amount would likewise be reduced. Thus, unlike in *Blough*, the present contract does not state that the contract was for a lump sum. On the contrary, the contract provisions discussed above demonstrate that payment for topsoil is to be made on a per-unit basis.

Accordingly, we conclude that the Board correctly interpreted the contract to provide for per-unit payment of topsoil.

## CONCLUSION

We have considered Jemison's remaining arguments and find them unpersuasive. We therefore *affirm* the Board's decision.

## **AFFIRMED**