FORTEC CONSTRUCTORS, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 84–1579.

United States Court of Appeals, Federal Circuit.

April 30, 1985.

David W. Mockbee, Jones, Mockbee & Bass, Jackson, Miss., argued for appellant.

George M. Beasley, III, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Sandra P. Spooner and Stephen J. McHale, Washington, D.C.

David A. Tomlinson, Engineer Trial Atty., Dept. of the Army, of counsel.

Before BENNETT, SMITH, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Fortec Constructors appeals from the decision of the Armed Services Board of Contract Appeals (ASBCA or Board) sustaining a contracting officer's final decision denying Fortec's claim for an equitable adjustment. We affirm.

## BACKGROUND

Fortec was awarded contract DACA63–81–C–0041 by the United States Army Engineer District of Fort Worth on December 31, 1980. This contract called for the construction of a 32,000 square foot one-story medical clinic at Fort Sam Houston, San Antonio, Texas. The clinic structure rests on a concrete distribution rib slab foundation consisting of reinforced concrete beams, exterior grade beams and interior grade beams (distribution ribs).

The project commenced on February 3, 1981. After preparing the foundation area and placing the reinforcing steel (rebar) in the exterior grade and interior distribution rib trenches, Fortec began tying the rebar on June 3, 1981, for the first 25–foot concrete pour and continued to tie the rebar and pour the slab in 25–foot pours with the eighth and final pour on July 29, 1981. On July 28, 1981, a dispute arose about the manner of installing the rebar. Fortec had installed the rebar in the interior distribution ribs so that it butted up against the exterior grade beams without extending or lapping into them. The Corps area engineer informed Fortec that the rebar was improperly placed because the interior distribution rib rebar did not overlap the exterior grade beam rebar. On September 10, 1981, the Corps directed Fortec to immediately remove the concrete at the junction of the interior distribution ribs and exterior grade beams to determine if the rebar placement complied with contract documents. Thirty-five junctions were demol-

ished; only two junctions met lapping requirements.

## DRAWINGS AND SPECIFICATIONS

The contract drawings, sheet S–3, sequence number 55, sections 01 and 02 and details 19 and 20, *see Fortec Constructors,* 84–2 BCA ¶ 17,328, at 86,345 (1984), schematically illustrate the rebar in the distribution ribs intersecting the rebar in the exterior grade beams. Drawing sheet S–6, sequence number 58, provides two instructions of importance under the "Reinforcing Steel Notes," specifically notes 3 and 4, which provide:

3. DETAILING OF CONCRETE REINFORCEMENT AND ACCESSORIES SHALL BE IN ACCORDANCE WITH ACI 315–74.

4. REINFORCING BARS MAY BE SPLICED ONLY AS SHOWN ON THE DRAWINGS EXCEPT THAT REINFORCING DESIGNATED AS 'CONTINUOUS' MAY BE CONTACT LAP SPLICED 36 BARS DIAMETERS. LAP SPLICES OF CONTINUOUS REINFORCING SHALL BE MADE OVER SUPPORTS FOR BOTTOM BARS AND FOR INTERMEDIATE BARS AND AT MIDSPAN FOR TOP BARS. AT EXTERIOR SUPPORTS, TOP BARS SHALL BE HOOKED DOWN AND BOTTOM BARS SHALL BE HOOKED UP.

*Fortec,* 84–2 BCA at 86,346.

American Concrete Institute (ACI) Standard 315–74, incorporated by reference in note 3, provides the details of concrete reinforcement. The schematic illustrating the reinforcement in ACI 315–74 is shown at figure 2–9 entitled "Typical Wall Details." Two alternative structures are shown for double curtain reinforcement.

**Typical intersection details for double curtain reinforcement**

The detail on the left shows the rebar from the interior distribution rib stopping at the exterior grade beam. The detail on the right depicts the rebar from the interior distribution rib running into the exterior beam. No instruction was provided which would have enabled Fortec to select either of these two alternative reinforcement schemes.

## ASBCA DECISION

The Board's decision reported at 84–2 BCA ¶ 17,328 found that the drawings, notes, and details were not a model of clarity. It held that a finding of ambiguity was not necessary in order to go outside the four corners of the contract to resolve the dispute as to whether Fortec complied with the terms of the contract. It found:

[T]hat a concrete distribution rib type of foundation is commonly found in the area to provide 'continuous reinforcement' in foundations which have a tendency to deflect due to either the absorption or loss of moisture at the perimeter of buildings (findings 7, 8). Experts from both sides agreed without exception that in distribution rib type of founda-

tions seen and found in the area, the interior rebars always lap or tie into exterior support (finding 9). We conclude from the foregoing that the Government has established a *prima facie* case that in the locality of the construction, there is a trade practice when installing a concrete distribution rib type of foundation to lap interior rebars from the distribution ribs into the exterior grade beams.

*Fortec,* 84–2 BCA at 86,351 (emphasis in original).

It also found that the hook configuration at the ends of the interior rebar should have indicated to an experienced contractor that the interior rebar was to be lapped over the exterior grade beam rebar. Fortec had installed the rebar in accordance with ACI 315–74 figure 2–9 details showing the interior distribution rib rebar stopping at the exterior grade beam. The Board held that Fortec was not entitled to an equitable adjustment for having been required to demolish and reconstruct the thirty-three noncomplying intersections between the interior and exterior grade beams.

OPINION

█ This court has jurisdiction under 28 U.S.C. § 1295(a)(10) (1982) to hear an appeal pursuant to 41 U.S.C. § 607(g)(1)(A) (1982). Our standard of review is governed by 41 U.S.C. § 609(b) (1982):

[A]ny contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

The interpretation of a contract is a question of law to be decided by the court and an administrative interpretation of a contract is not binding on the court. *B.D. Click Company v. United States,* 614 F.2d 748, 752, 222 Ct.Cl. 290 (1980). However, a Board's interpretation of a contract will be given careful consideration and accorded great respect. *George Hyman Construction Co. v. United States,* 564 F.2d 939, 944, 215 Ct.Cl. 70 (1977).

Fortec contends that the Board's reliance on trade practice to change the meaning of an unambiguous contract was contrary to law. It argues that the contract provisions permitted the butting of the interior distribution rib rebar to the exterior grade beams. The Board in its decision declined to hold that the contract was ambiguous despite resorting to evidence of trade practice to interpret the terms of the agreement. We hold as a matter of law that the contract was patently ambiguous. Our review of the record before this court shows that no direction was provided as to which of the two rebar schemes shown in ACI 315–74, figure 2–9, "Typical intersection details for double curtain reinforcement," was required.

█ The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation. *Newsom v. United States,* 676 F.2d 647, 649–50, 230 Ct.Cl. 301 (1982); *FFR Building Specialties v. United States,* 229 Ct.Cl. 538, 539–40 (1981). Fortec did not seek clarification of the rebar requirements; it instead exercised its own judgment. In deciding the correct meaning of a contract containing a patent ambiguity it is proper to consider the trade standards and practices of the relevant business community. *Alfred A. Altimont, Inc. v. United States,* 579 F.2d 622, 625, 217 Ct.Cl. 628 (1978). A contractor is charged with the knowledge of these standards. *Id.* The Board's trade practice findings are not arbitrary, capricious, or grossly erroneous. Furthermore, Fortec's own expert testified that rebar from the interior grade beam is normally tied into the exterior grade beam. *Fortec,* 84–2 BCA at 86,343.

█ Fortec further contends that the presence of a Corps of Engineers Quality Assurance representative at the project site charged with the responsibility of seeing that the plans and specifications were complied with constituted an acceptance of the alleged defects because of the representa-

tive's failure to notify Fortec of the defects. Clause 10 of the contract's general provisions provides in part:

(a) All work ... shall be subject to inspection and test by the Government at all reasonable times and at all places prior to acceptance. Any such inspection and test is for the sole benefit of the Government and shall not relieve the Contractor of the responsibility of providing quality control measures to assure that the work strictly complies with the contract requirements. *No inspection or test by the Government shall be construed as constituting or implying acceptance.* [Emphasis added.]

To agree with Fortec's contention would render clause 10 meaningless. This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir.1983). Therefore, Fortec's contention is rejected for being inconsistent with contract clause 10. The Corps quality assurance inspections did not constitute an acceptance of the work.

Fortec's claim for equitable adjustment was properly denied.

AFFIRMED.