**J.B. STEEL, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–1311.**

United States Court of Appeals, Federal Circuit.

Feb. 4, 1987.

Joseph A. Yazbeck, Jr. and Fred L. Kopatich, Allen, Kilmer, Schrader, Yazbeck and Chenoweth, P.C., Portland, Or., for appellant.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and Jonathan S. Baker, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee.

Before MARKEY, Chief Judge, DAVIS and ARCHER, Circuit Judges.

DAVIS, Circuit Judge.

The issue is whether a Forest Service contract awarded to appellant J.B. Steel, Inc. (Steel) was patently ambiguous (with regard to the pertinent aspect of the work) so as to call upon Steel to inquire from the contracting officer before it bid. The Board of Contract Appeals of the Department of Agriculture held that it was (*J.B. Steel, Inc.*, 86–2 BCA (CCH) ¶ 18,938) and Steel appeals. We affirm.

## I.

The contract was for expansion of the cold storage and tree package building at a Forest Service nursery facility (the Humboldt Nursery) in the Shasta-Trinity National Forest in California. The Service's solicitation covered a "base bid" and some options (which might not be awarded). The base bid included construction of a new area large enough to house two cold storage rooms and other spaces; both parties agree that all of cold box No. 5 was included in the base bid. Option No. 1, which was *not* awarded, related to "Construction of Cold Box No. 6 refrigeration mechanical and electrical." Steel says that in bidding it reasonably construed a portion of the work it was later required by the Government to perform on Cold Box 6 (because the Government says that work was covered by the base bid) as blanketed by unawarded Option No. 1.[1] Steel sought an equitable adjustment under the contract. As we have said, the Board of Contract Appeals (BCA or Board) determined that, with respect to the particular point, the contract was ambiguous and "the contract indications were sufficient to place the contractor on notice of its error in interpretation of the ambiguous requirements." 86–2 BCA (CCH), *supra* at 95,660.

However, the BCA found that Steel actually based its bid on its own interpretation of the contract. The Board likewise found that the contracting officer did not have actual or constructive notice (before the award) of Steel's interpretation. These latter two findings are not controverted before us, nor could they be under the standards by which we review BCA factual findings.

## II.

The ultimate question of whether a contract is patently ambiguous is one

---

1. The Government's position was that the contract required complete construction of the two cold storage rooms (cold boxes Nos. 5 and 6) under the base bid except that the refrigeration mechanical and electrical work for one of the rooms (cold box No. 6) was to be under Option No. 1 which was not awarded. Steel understood the same contract provisions to require two rooms but that only one (cold box No. 5) was to be fully constructed under the base bid; aside from refrigeration, mechanical and electrical work, part of cold box No. 6 was considered by Steel to be Option No. 1 work. *See* 86–2 BCA at 95,650. That is the part now in dispute.

aspect of the interpretation of the contract and, for that reason, is for the court to decide, though the Board's view on that issue will be accorded great respect. *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985). Of course, the factual findings underlying a determination of patent ambiguity are subject to the substantial evidence standard. *Id.*

In reaching its conclusion that there was a patent ambiguity as to how much of cold box No. 6 was to be constructed by Steel, the BCA pointed out a large number of contract provisions that were apparently inconsistent with Steel's understanding of its obligations under the contract, as well as apparent inconsistencies with other contract provisions. For example, option work was specifically noted in several drawings, and mechanical and electrical work was differentiated as option or base bid work, while other relevant provisions were not so precise. *See* 86-2 BCA at 95,657-59. The Board then concluded that a "reasonably prudent review of the contract" would have disclosed these inconsistencies and the resulting patent ambiguity. 86-2 BCA at 95,660.

The Board also took into account the fact that Steel's estimator gave most of his attention to prime contract work and did not review the contract in detail in areas of subcontract work such as mechanical and electrical, relying on the subcontractors to determine what was included.[2] Also, Steel's president looked over the solicitation papers the evening before bidding but his consideration was given mostly to the bid schedule and summary of work. 86-2 BCA at 95,658.[3]

■ We cannot fault the Board's analysis or disagree with its conclusions. First,

Steel's bid preparation slighted most of the actual provisions of the contract. This lack of proper scrutiny was important because the contract was far from a model of drafting, and careful examination would have revealed the inconsistencies and patent ambiguities in the contract provisions. Bidders should not assume either that Government contracts are models of articulation or that the bidders can rely on the Board of Contract Appeals or the courts to save them from their own failure to help themselves by careful reading of the contract papers.[4]

Second, the apparent inconsistencies were all disclosed on the face of the papers, but appellant nevertheless characterizes all of them as insignificant, and therefore "latent." The BCA did not adopt that attitude, and neither do we. For instance, Steel's interpretation would eliminate an interior wall entirely, leaving no location for a specified wall switch and leaving the area entirely open. Steel's interpretation would also require the destruction of a 5″ thick concrete slab to install the urethane frame insulation as Option No. 1 work. 86-2 BCA at 95,658-59. These are not minor matters and at the least should have pushed Steel to ask the contracting officer, before bidding, if the Government really intended those things to be done.[5] It makes no difference that Steel *now* finds it possible to explain away and reconcile, to its own satisfaction, all of the inconsistencies and conflicts. "The existence of a patent ambiguity in the contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation." *Fortec, supra,* 760 F.2d at 1291.

AFFIRMED.

---

**2.** A large part of the contract adjustment sought by Steel related to subcontractor work which was thought to be extra under Steel's interpretation.

**3.** These factual findings are well supported by substantial evidence.

**4.** It is not persuasive that Steel's witnesses testified that its estimator, president and subcontractors found no ambiguity. Their scrutiny of the

papers was not impressive. The contracting officer's representative also found no ambiguity but he obviously started with the Government's position and, from that viewpoint, found it easy to reconcile all the apparently inconsistent contractual provisions.

**5.** The Board's findings make it clear that there was no effort to inquire. 86-2 BCA at 95,658 (fdg. 12).