932 F.2d 981
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HYDRO GROUP, INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 90-5031.
 United States Court of Appeals, Federal Circuit.
 April 23, 1991.
Rehearing Denied July 9, 1991.
 
 Before ARCHER, PLAGER and CLEVENGER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 DECISION
 
 1
 This is an appeal from a judgment of the United States Claims Court, Hydro Group, Inc. v. United States, No. 190-87C (Cl.Ct. Oct. 19, 1989). The case involves a contract dispute between plaintiff-appellant Hydro Group, Inc. (Hydro) and the Department of the Interior's Office of Surface Mining. Hydro originally sued the United States (Government) for payment for two different materials, plasticizer and bentonite, used in performance of the contract. The claim for the plasticizer was dropped after the Claims Court, in a fact-specific context, held against Hydro on that issue. With regard to the claim for payment for the bentonite, the Claims Court held that the contract was sufficiently confused regarding the payment issue so as to be classified as "patently ambiguous." The court found that Hydro knew of the ambiguities before it submitted its bid and did not do enough to meet its duty of inquiry.
 
 
 2
 We disagree. Hydro, by calling the matter to the attention of the Government's Contracting Officer (CO) following the pre-bid conference, did what a reasonable contractor could be expected to do. The fact that the CO's ordered change to the invitation for bid (IFB) did not correctly and clearly state what the Government now claims it meant is not Hydro's fault. Nor should Hydro, on these facts, be charged with knowledge of the Government's intentions, since it is not clear that the Government knew what it intended. Accordingly, we reverse and remand.
 
 DISCUSSION
 
 3
 In response to an IFB for certain mine stabilization work near Portercrest, Alabama, Hydro questioned an ambiguity in paragraph 8.13.2 of the contract which stated that "[p]ayment for bentonite will be on the basis of the bid price per pounds [sic] times the number of cubic feet of bentonite actually mixed and injected in the grout holes." Joint Appendix at 109. Hydro was concerned because the IFB's itemized bid sheet did not provide an appropriate blank for entry of a per pound bid price for bentonite.
 
 
 4
 The absence of a place in the IFB for entering the price per pound for bentonite, which Hydro called to the attention of the CO, should have been enough to alert the Government to the fact that there was a problem with the contract. And indeed there was.
 
 
 5
 The contract listed the various items to be provided or performed by the contractor including a place for the bidder to enter the total amount bid for supplying "Material for Saturation Grouting." Evidence was presented to the Claims Court that in a previous contract between the Government and Hydro for similar work at another site, the specified mixture of materials used for saturation grouting did not require that bentonite be included, but only provided that it could be used if the conditions warranted. That led to a dispute between the Government and Hydro over who would pay for the bentonite when it was in fact included in the mixture.
 
 
 6
 In this contract, the paragraph describing the content of the saturation grouting mixture (paragraph 4.2.1) had been drafted to require that bentonite be used in the mixture "in the amount of two percent of the weight of the dry cement." Had that provision and the specified dollar amount scheduled for providing the mixture, referred to above, been all the contract said about the question, there would be little doubt that Hydro was obligated to include bentonite in its bid price for materials.
 
 
 7
 Unfortunately, in changing the provision in paragraph 4.2.1 from permissive to mandatory, no change was made in the related provision in section 8 of the contract, entitled "Payment." As previously noted, paragraph 8.13.2 specifically provides that, with regard to "Bentonite for Grout, ... [p]ayment for bentonite will be on the basis of the bid price per pounds [sic] times the number of cubic feet of bentonite actually mixed and injected in the grout holes." Joint Appendix at 109.
 
 
 8
 The Government, in response to Hydro's request for clarification, added a new line to the contract which read: "Bentonite--delivered, stored, mixed, and pumped into mine as part of grout mix--cost per pound $________." Hydro duly filled in a dollar amount. Plaintiff's bid was accepted, and the contract performed.
 
 
 9
 Hydro now claims payment for the bentonite used; the Government has denied this claim. The Government argues that paragraphs 4.2.1 and 4.2.3.6 of the contract require the grout mixture to contain about two percent bentonite. The Government further argues that paragraph 8.13.2 and the reference to the cost per pound of bentonite refer only to bentonite in addition to the two percent.
 
 
 10
 The key question is whether the contractor acted reasonably in a situation in which it became apparent that there was a problem in the way the Government had written the IFB. Our precedents establish that in such a situation the contractor cannot remain silent and later claim that, since the Government wrote the contract, the contract should be construed against the Government. That is unfair and creates a perverse incentive. See, e.g., Collins Int'l Serv. Co. v. United States, 744 F.2d 812, 814 (Fed.Cir.1984).
 
 
 11
 But the bidder is not in a position to insist that the Government write better contracts. If the Government is put clearly on notice of the problem and the bidder's concerns, has a full opportunity to address the problem, and if the Government's response confirms an interpretation that is beneficial to the bidder and contrary to the Government's interests, the Government cannot be heard to complain later that it meant something else and that somehow the bidder should have known this.
 
 
 12
 Interpretation of a contract is a conclusion of law, and the determination of whether a contract is ambiguous is also a conclusion of law. Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985). We reverse when such conclusions are incorrect as a matter of law. Heisig v. United States, 719 F.2d 1153, 1158 (Fed.Cir.1983). Of course, factual findings are reviewed under the substantial evidence standard. J.B. Steel, Inc. v. United States, 810 F.2d 1139, 1141 (Fed.Cir.1987).
 
 
 13
 We disagree with the Claims Court's legal characterization of the contract as "patently ambiguous." On its face, paragraph 8.13.2 makes clear that the contractor will be compensated for bentonite "actually mixed and injected in the grout holes." It does not speak of "bentonite in excess of the two percent described in paragraph 4.2.3.6." To adopt the Government's suggestion that paragraph 8.13.2 refers only to "additional" bentonite would require this court to rewrite the contract and insert words to which the parties never agreed. We lack the authority to do so. George Hyman Constr. Co. v. United States, 832 F.2d 574, 581 (Fed.Cir.1987). If that is what the Government intended the contract to say, the Government had ample opportunity to so provide, both when it first amended paragraph 4.2.1 to require the bentonite, and later when Hydro specifically called the Government's attention to the confusion created by the way in which that amendment was executed. Hydro did what it could to get the Government to state clearly its intentions regarding payment; the cost for failure to do so falls where it should, on the Government.
 
 
 14
 We therefore reverse the judgment of the Claims Court and remand for further proceedings consistent with this opinion.