989 F.2d 1201
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Richard B. JOLLEY, Petitioner,
v.
DEPARTMENT OF DEFENSE, Respondent.
 No. 92-3285.
 United States Court of Appeals, Federal Circuit.
 Feb. 1, 1993.
 
 Before ARCHER, MAYER and MICHEL, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Richard B. Jolley appeals from the September 11, 1991, Initial Decision of the Administrative Judge (AJ) of the Merit Systems Protection Board (Board), Docket Number DC043288C0556, denying Jolley's Petition for Enforcement of a settlement agreement between Mr. Jolley and the Department of Defense (Defense or agency), which became the final decision of the Board on January 27, 1992 when the Board denied review. We reverse and remand.
 
 DISCUSSION
 
 2
 Mr. Jolley argues on appeal that the AJ erred because he did not apply elementary principles of contract law to the settlement agreement. Mr. Jolley contends that the AJ's interpretation of the settlement agreement conflicts with the intent and purpose of that agreement to keep secret from prospective employers the circumstances of Mr. Jolley's separation and help Mr. Jolley seek new employment. We agree.
 
 
 3
 "[A]n interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." Fortec Constructors v. United States, 760 F.2d 1288 (Fed.Cir.1985) (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983)). Defense argues that the agreement language, "at which time the Agency will correctly describe the terms of his separation," (emphasis added) specifically allowed Defense, after the date of Mr. Jolley's resignation, to make disclosures regarding Mr. Jolley's poor performance. However, the agreement also provides, inter alia, that "Mr. Jolley's removal from his position is rescinded and all documentation related thereto be expunged from his personnel records," "[t]he Agency shall purge its records of all information pertaining to Mr. Jolley except those records which are maintained in accordance with law and regulation," and "[t]he agency will provide a satisfactory interim evaluation for Mr. Jolley's use in seeking employment."
 
 
 4
 Under Defense's interpretation of the "correctly describe" language, the agency would only be required to respond favorably to inquiries regarding Mr. Jolley for approximately two months--from November 22, 1988, the date of the settlement agreement, to January 20, 1989, the effective date of Mr. Jolley's resignation. According to Defense, after this period the agency would be allowed to tell inquiring prospective employers that "there were adverse conditions concerning poor performance," or something similar, as Mr. Taylor did on at least two occasions. This construction renders pointless the agreement's provisions for Defense to purge its personnel records regarding Mr. Jolley and to permit Mr. Jolley's attorney "to review this record to insure all corrections have been accomplished" prior to the agency's releasing any such information.
 
 
 5
 Furthermore, under Defense's construction of the agreement, the interim performance evaluation provided by Mr. Taylor would be valid for only two months, as Mr. Taylor's disclosures nullified the "fully satisfactory" rating he gave Mr. Jolley on that evaluation. We conclude, however, that the parties intended that Mr. Jolley would use the evaluation to search for a new job even after his resignation, because it would be unreasonable to believe Mr. Jolley would give up his right to appeal for only a two-month window in which to find a new job.
 
 
 6
 Inasmuch as Defense's interpretation would render several clauses of the settlement agreement meaningless, we construe the phrase "correctly describe the terms of his separation" in the context of the settlement agreement to mean that the agency was not to divulge Mr. Jolley's performance problems with the agency to inquiring outside employers, but rather was to describe his separation as a resignation after fully satisfactory performance. Therefore, the agency's disclosures, via Mr. Taylor, to the private companies who inquired about Mr. Jolley, constituted a breach of the settlement agreement.
 
 
 7
 We reverse a Board's decision only if we conclude that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1988). As the discussion above reveals, here the AJ's construction of the settlement agreement was clearly not in accordance with law. Because we decide this case based on the clear meaning of the language of the settlement agreement itself, we do not reach the issue of whether it was proper for the AJ to use the modification agreement as evidence of the parties' intent at the time of making the settlement agreement. Accordingly, we reverse and remand to the Board for a determination of the remedy to be provided to Mr. Jolley.
 
 COSTS
 
 8
 Costs are assessed against the Department of Defense.