**DELCON CONSTRUCTION CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

**No. 91–1226C.**

United States Court of Federal Claims.

Feb. 9, 1993.

Leonard Spielberg, White Plains, NY, for plaintiff.

Deborah A. Brinley, Civ. Div., U.S. Dept. of Justice, for defendant, with whom were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and James M. Kinsella, Asst. Director. B.J. Meadows, III, U.S. Postal Service, of counsel.

## OPINION

MARGOLIS, Judge.

This case comes before the court on defendant's motion for summary judgment. The plaintiff, Delcon Construction Corporation ("Delcon"), contracted with the U.S. Postal Service ("USPS") to build a postal facility in Chappaqua, New York. The plaintiff incurred costs in excavating rocks from below the surface at the construction site. The dispute centers on whether rock excavation was part of the contract. The plaintiff argues that the parties understood that rock excavation was not part of the contract, and therefore the plaintiff is entitled to additional compensation for this work. The defendant, United States, argues that rock excavation was part of the contract, any ambiguity in the solicitation was a patent one, and the plaintiff bore the responsibility to clarify ambiguities. After careful consideration of the record and after hearing oral argument, this court holds that the solicitation contained a patent ambiguity as to whether the contract required rock excavation, that the plaintiff had a duty to clarify the ambiguity, and that the plaintiff's inquiry failed adequately to fulfill that duty. Therefore, the risk of misinterpreting the contract requirements falls on the plaintiff. Accordingly, the court grants the defendant's motion for summary judgment.

## FACTS

On July 31, 1989, the USPS issued a solicitation for bids on a contract to build a postal facility. The solicitation called for the contractor to provide all labor and materials for site preparation and construction, including general excavation. The USPS held a pre-proposal conference on August 14, 1989, to enable prospective offerors to ask questions and obtain a better understanding of contract requirements. Delcon Vice President Michael Greene at-

tended the conference and asked whether rock excavation and removal were to be included in the contract. In response to the question, the project architect handed him a copy of an amendment to the solicitation, Amendment AO1, which contained copies of boring logs and a Boring Location Plan drawing. These logs described the amount and types of subsurface materials at the site and indicated the presence of subsurface rocks. The cover page of AO1 stated "Boring Data is furnished for IN-FORMATIONAL PURPOSES ONLY AND IS NOT A PART OF THE SOLICITA-TION." (emphasis in original). All the boring logs and the drawing contained the handwritten notation "for information only—NIC," which stands for "-not in the contract-". The government states this notation meant simply that the data disclosed in these documents were not a guarantee of what materials lay beneath the surface of the site. Delcon, however, interpreted "NIC" to mean that rock excavation was not required by the contract.

Delcon submitted a proposal on August 25, 1989. The cover of its proposal notes in handwriting "PROPOSAL INCLUDES ROCK EXCAVATION," but Delcon claims that this notation was an error and that its proposal did not include rock excavation. The USPS awarded the contract to Delcon on October 20, 1989.

At a post-award, pre-construction meeting on October 26, 1989, Delcon officials stated their understanding that rock excavation was not part of the contract. The government disagreed. Despite the disagreement, Delcon fully performed the contract, including excavating and removing rocks from the site. Delcon filed a claim for $207,954.50 with the contracting officer on May 30, 1990 for additional compensation for rock excavation. The contracting

officer denied the claim on July 20, 1990. This litigation followed.

## DISCUSSION

■ Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56. All justifiable inferences are to be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ This dispute is over contract interpretation, which is a question of law. *Monarch Painting Corp. v. United States,* 16 Cl.Ct. 280, 286 (1989). This court must first determine whether an ambiguity in the contract exists. An ambiguity is said to exist if the contract is susceptible of two different interpretations, each of which is found to be consistent with the contract's language. *Sun Shipbuilding & Dry Dock Co. v. United States,* 183 Ct.Cl. 358, 372, 393 F.2d 807 (1968).

■ At the outset, the court notes that neither the original solicitation nor amendment AO1 specifically mentions that rock excavation and removal are part of the contract. The solicitation does specifically require *general* excavation of the site. It requires the contractor to "remove all materials of any nature to the design subgrades indicated." "All materials" would seem to include rocks. Thus, a reasonable interpretation of the solicitation is that it included rock excavation because it required general excavation without limiting the type of material to be excavated. Other provisions of the solicitation can be construed to support this interpretation.[1] The

---

1. The "Scope of Work" section of the solicitation included "[g]eneral excavation," Part 1.1B2, without any limitation of the type of material required to be excavated. Another section entitled "EXCAVATION," Part 3.2A, does not limit the type of material required to be excavated. The section listing "Work Not Included" in the contract, Part 1.1D, does not mention rock excavation. The solicitation called for the use of

explosives during excavation, and explosives are used to excavate rock. Part 3.4. The defendant also points out that the presence of rock at the site was obvious. Rocks were visible on the surface, and subsurface boring logs and drawings, which were given to prospective bidders, showed the presence of rocks beneath the surface.

defendant argues for these reasons that the solicitation clearly required rock excavation.

The plaintiff, however, argues that the solicitation is ambiguous because it does not specifically mention rock excavation, and a contractor would reasonably expect rock excavation to be specifically mentioned if the contract required it. Delcon states that rock excavation is typically bid on a per-unit basis, not in a lump sum, unless language more specific than the language in this solicitation states otherwise. This was a lump-sum contract. At oral argument, Delcon reasoned that the government could not expect contractors to bid on rock removal because the government did not provide full information on the quantity of subsurface rocks. Delcon claims it would be unreasonable to expect contractors to bear the risk of the uncertainty of the presence of rocks since rock removal is expensive.

■ The court notes that a government contractor does not bear the burden of interpreting a contract correctly, only of interpreting it reasonably. *Salem Eng'g & Constr. Corp. v. United States*, 2 Cl.Ct. 803, 807 (1983). The court finds that the original solicitation was ambiguous. Viewing the solicitation from the position of a reasonably prudent contractor, the specifications could be read to show a patent ambiguity as to whether rock excavation was part of the contract.

■ The next question is whether Delcon fulfilled its duty to inquire about the ambiguity. Where there is a patent ambiguity in contract specifications, contractors have a duty to clarify the ambiguity prior to bidding on the contract. *J.B. Steel, Inc. v. United States*, 810 F.2d 1139, 1141 (Fed. Cir.1987). Delcon argues that it did inquire. Delcon Vice President Michael Greene asked at the pre-bid conference whether rock excavation was included in the contract. The government's response was to hand out a copy of amendment AO1.

■ However, AO1 did not state that rock excavation was excluded or included in the contract requirements. AO1 contained data from the results of test borings of the soil at the site and indicated the composition of the soil, including the type of soil and rocks. The amendment did not answer Delcon's question, but Delcon officials made no attempt to seek further clarification.

Delcon argues that it reasonably relied on amendment AO1 to conclude that the contract did not require rock excavation. Delcon points to the "NIC" notation on the boring logs in AO1. Both parties agree that "NIC" stands for "-not in the contract-." Delcon claims that it reasonably interpreted "NIC" to mean that the work referred to in the amendment was not in the contract.

This court finds, however, that Delcon's interpretation of "NIC" was unreasonable. The boring logs contained information about the soil composition, not just rock. Therefore if it were true that "-not in the contract-" referred to the work to be performed, then amendment AO1 would have amended the contract to require no excavation at all. Neither party claims such a meaning was intended. Moreover, Delcon's interpretation contradicted the statement on the cover page of AO1. The cover page stated that "Boring Data is furnished for INFORMATIONAL PURPOSES ONLY AND IS NOT A PART OF THE SOLICITATION." (emphasis in original).[2] This statement explains that it is the data, not the work, that is "-not in the contract-". Under Delcon's interpretation, the amendment would have created, not resolved, a patent ambiguity, giving rise to Delcon's duty to inquire about the meaning of the amendment.

■ Delcon had a duty to seek clarification of any ambiguities in the amendment. Section J.9 of the contract warns that "[i]f any resultant solicitation amendment creates ambiguities, it is the responsibility of the offeror to seek clarification before . . .

---

**2.** Section 1.4C of the solicitation also provides that records of test borings are furnished "for information only and are not guaranteed to represent all conditions that will be encountered."

submitting an offer." That same clause requests contractors to submit questions in writing prior to the pre-proposal conference. Section J.6 warns contractors that "oral explanations or instructions will not be binding." Yet Delcon failed to submit its question in writing, failed to get a written clarification, and never contacted the contracting officer. The purposes of placing the burden of inquiring about patent ambiguities on contractors are to allow correction of errors before contract award and to ensure that all contractors bid on the basis of identical specifications. *Monarch*, 16 Cl.Ct. at 287. Had Delcon inquired in writing or sought clarification from the contracting officer, this misunderstanding, and this litigation, could have been avoided.

## CONCLUSION

Delcon's interpretation of amendment AO1 was unreasonable and created a patent ambiguity. Because Delcon failed to inquire about the ambiguity in amendment AO1, Delcon bears the risk of misinterpretation of the contract requirements. Accordingly, this court grants defendant's motion for summary judgment. The Clerk will dismiss the complaint. No costs.